# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

WYATT ARMS, INC. d/b/a Wyatt's          )
Sporting Goods, an Indiana Corporation, )
                                        )
     Plaintiff/Petitioner,             )
                                        )
  vs.                                  )     Cause No. 1:09-cv-0422-LJM-JMS
                                        )
ERIC HOLDER, JR., Attorney General      )
of the United States, U.S. DEPARTMENT   )
OF JUSTICE, and THE BUREAU OF           )
ALCOHOL, TOBACCO, FIREARMS              )
AND EXPLOSIVES,                         )
                                        )
     Defendants/Respondents.           )

## DEFENDANTS/RESPONDENTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

Wyatt Arms, Inc. ("Plaintiff" or "Wyatt") filed a complaint/petition for review of ATF's administrative decision to revoke Wyatt's federal firearms license ("FFL").  This Court should enter judgment as a matter of law in favor of Defendants/Respondents Eric Holder, Jr., Attorney General of the United States, U.S. Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms and Explosives (collectively, "Defendant" or "ATF").

The undisputed facts in this case show that the ATF was authorized as a matter of law to revoke Wyatt's FFL.  At a minimum, the undisputed facts, as set forth in the administrative record, comprehensively demonstrate that Wyatt by its own admission violated the record keeping, inventory, and reporting obligations under the GCA and its implementing regulations.  Moreover, Wyatt's admitted violations were willful as a matter of law because Wyatt was repeatedly cited for and counseled with respect to such legal obligations, yet repeatedly failed to comply with those obligations.  ATF gave Wyatt proper notice and an opportunity to be heard

prior to revoking the FFL.  Under these circumstances, ATF properly revoked Wyatt's FFL as a matter of law.  Furthermore, ATF was well within its legal authority to revoke Wyatt's FFL immediately.

For these reasons, ATF respectfully requests that the Court grant summary judgment in its favor.

## II.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A.    Procedural Posture

ATF first issued an FFL to Wyatt in 1992, authorizing Wyatt to engage in business as a dealer in firearms other than destructive devices.  (GX 15.)[1]  ATF issued Wyatt the FFL currently at issue, No. 4-35-057-01-8H-37562, on August 5, 2005, with an expiration date of August 1, 2008.  (GX 1.)

On or about July 22, 2008, ATF issued to Wyatt a Notice of Revocation of License ("ATF Form 4500").  (GX 2.)  ATF advised Wyatt that it had a right to an administrative hearing to review the revocation of its license and that it could be represented by counsel and present evidence at the hearing.  (GX 2, 7, 9.)  Wyatt timely requested a hearing.  (GX 4.)  The hearing took place in Indianapolis on December 4, 2008; Wyatt, represented by counsel, appeared at the hearing and presented evidence.[2]

At the close of the hearing, Hearing Officer Charles A. Peterson advised Wyatt that if it received a Final Notice of Revocation of License ("Final Notice"), it could within 60 days of receiving the notice file a request for review under 18 U.S.C. § 923(f)(3) in the federal District Court in which it conducted business.  (TR 115.)  Hearing Officer Peterson issued a report

---

[1] Concurrent with its motion and supporting memorandum, Defendant files with the Court its administrative record and accompanying government exhibits.  Citation to government exhibits takes the form "GX," and citation to the administrative record the form "AR."

[2] Citations to the hearing transcript take the form "TR."  The transcript is contained AR A.

concluding that Wyatt had committed willful violations of the GCA and related regulations and recommending revocation of Wyatt's FFL.  (AR B.)  On February 25, 2009, Marcia Lambert, ATF Director of Industry Operations ("DIO") for the Columbus Field Division, issued to Wyatt a Final Notice.  Wyatt received the Final Notice on March 13, 2009.  (AR C.)  Wyatt then filed its complaint/petition in this Court on April 9, 2009.

**B.    Applicable Law and Regulatory Scheme**

A key purpose of the GCA, codified as amended at 18 U.S.C. §§ 921-930, is "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous" or otherwise not eligible to purchase firearms.  *Barrett v. United States*, 423 U.S. 212, 218 (1976).  For example, under the GCA, it is unlawful for dealers to transfer guns to persons who they know or have reasonable cause to believe fall within various categories, such as those under indictment for or convicted of a crime punishable by imprisonment for more than one year, illegal aliens, and those convicted of a misdemeanor crime of domestic violence.  *See* 18 U.S.C. § 922(d)(1)-(9); 27 C.F.R. § 478.99(c).  Thus, the GCA, and its implementing regulations contain stringent record-keeping requirements for firearms dealers.  *See* 18 U.S.C. § 923(g) and 27 C.F.R. Part 478.  This case implicates at least three of these requirements.

First, dealers must complete a Firearms Transaction Record, ATF Form 4473, in order to record identifying information about gun purchasers, to prevent gun transfers to persons prohibited from possessing firearms, and to facilitate tracing guns later involved in crimes.  *See J&G Sales, Ltd., v. Truscott,* 473 F.3d 1043, 1045 (9th Cir.), *cert. denied*, 128 S. Ct. 208 (2007).  A prospective transferee (buyer) of a firearm must complete Section A of the form to disclose identifying information[3] and to answer questions that inform the dealer whether it can legally

---

[3]  Specifically, the transferee must provide his or her full name, residence address, place of birth, height, weight, sex, race, birth date, county and state of residence, country of citizenship, and, if applicable, the INS-issued alien number or admission number.  *See* ATF Form 4473, 5-2007

transfer the firearm to the prospective transferee.  The dealer must then complete Sections B, C, and D to provide further details about the firearm(s) being transferred,[4] to request a National Instant Criminal Background Check System ("NICS") check on the transferee,[5] and to record the transferee's identifying documentation.[6]  After determining that it is not unlawful to transfer the firearm to the person identified in Section A, the transferor (licensee or employee of licensee) must enter his/her name, signature, title and date of transfer on the firearms transaction record.[7]

Second, each licensed firearm dealer must maintain a bound book identifying each firearm received into and transferred out of its inventory.  This book is referred to as the "Acquisition and Disposition Bound Book" ("A&D Record").  Acquisition entries in the A&D Record must identify the gun by manufacturer, model, serial number, type, and caliber or gauge; identify the date the licensee receives the gun; and identify the person (by name and address or FFL Number) who transferred the gun to the dealer.  The licensee must ordinarily record these entries no later than the close of the business day following the acquisition.[8]  Disposition entries must include the date the gun was transferred out of the licensee's inventory, the identity of the person to whom the gun was transferred, and the address of that person or the Form 4473 serial number associated with the transfer (or FFL Number, if transferred to another licensee).  *See* 27

---

version; 27 C.F.R. § 478.124(c)(1).

[4] *See* 18 U.S.C. §§ 922(m); 18 U.S.C. § 923(g)(1)(A) (2008); 27 C.F.R. §§ 478.124(c)(4); § 478.121(c); § 478.21(a).

[5] *See* 18 U.S.C. §§ 922(m), 922(t); 27 C.F.R. §§ 478.11 (definitions), 478.102, 478.121(c), 478.21(a), 478.124(c)(3)(iv).

[6] *See* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. §§ 478.21(a), 478.121(c), 478.124(c)(3)(I).

[7] *See generally* 18 U.S.C. §§ 923(g)(1)(A), 922(m); 27 C.F.R. §§ 478.124, 478.121(c), 21(a).

[8] The licensee may record the acquisition within seven days of receipt if it has a commercial record containing all the required information. *See* 27 C.F.R. § 478.125(g).

C.F.R. § 478.125(e).  The licensee must record these entries no later than seven days after the disposition.[9]  Licensees may retain A&D records via alternative methods, including computerized formats.[10]

Third, each licensed dealer must prepare a report of multiple sales or other dispositions of handguns whenever the dealer sells or otherwise disposes of—at one time or during any five consecutive business days—two or more pistols, revolvers, or any combination of pistols and revolvers to an unlicensed person.  The licensee must forward the report to ATF and State or local law enforcement not later than the close of business of the day the multiple sales or dispositions occurred.[11]

ATF may revoke a federal firearms license if the licensee has willfully violated any provisions of the GCA or its implementing rules and regulations.  *See* 18 U.S.C. § 923(e).  Although the GCA originally granted revocation authority to the Attorney General, 18 U.S.C. § 923(e), this authority was in turn delegated to ATF pursuant to statutory establishment of the bureau's new structure.  *See* 28 U.S.C. § 559A; *see also Best Loan Co. v. Herbert*, 601 F. Supp. 2d 749, 753 n.6 (E.D. Va. 2009) ("[T]he Attorney General has clearly delegated the authority to revoke federal firearms licenses to the Director of ATF, who has delegated this authority to each Field Division's DIO.").

The ATF can revoke a FFL for a single willful violation of the GCA or its implementing regulations.  *See Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 678 (N.D. Ill. 2004); *see also Armalite, Inc. v. Lambert,* 544 F.3d 644, 647 (6th Cir. 2008).  A licensee demonstrates willfulness when he "knew of his legal obligation and purposefully

---

[9] *See generally* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. §§ 478.125(e),(g).

[10] *See* 18 U.S.C. § 923(g)(5)(B); 27 C.F.R. § 478.125(h).

[11] *See* 18 U.S.C. § 923(g)(3)(A); 27 C.F.R. § 478.126a.

disregarded or was plainly indifferent to the record keeping requirements." *Article II Gun Shop Inc. v. Gonzales*, 441 F.3d 492, 497 (7th Cir. 2006) (quoting *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980)).

**C.     ATF Inspections of Wyatt**

ATF Industry Operations Investigators ("IOIs") conduct inspections during the application process to ensure both that the licensee is eligible to be licensed under the GCA and also that the applicant understands the record keeping requirements under the GCA.  IOIs later complete compliance inspections to review the licensee's required records, firearms inventory, and conduct of business in order to determine whether the licensee is complying with GCA requirements.  (TR 8-9, 13, 33, 43-47, 56-58, 66, 68, 79, 94-96.)  Recall compliance inspections ensure that licensees correct, and do not repeat, errors from prior inspections.  (TR 47.)

**(1)     1992 Application Inspection**

In March 1992, ATF IOIs John Marco and Lisa Laughlin conducted an application inspection at Wyatt.  (TR 43.)  Mr. Miles Wyatt, Wyatt's CEO, was present during the inspection.  (GX 15; TR 43-44.)  IOI Marco instructed Mr. Wyatt as to the GCA and regulatory requirements for conducting business and preparing records, including the maintenance of A&D Records, ATF Forms 4473, ATF Forms 3310.4 (Multiple Sale or Other Dispositions of Pistols and Revolvers), and ATF Forms 3310.11 (Federal Firearms Licensee Firearms Inventory Theft/Loss Report).  (GX 15; TR 43-45.)  The worksheet contains check marks before every topic addressed during the law and regulation review with Mr. Wyatt on March 10, 1992, which lasted over an hour.  (GX 15.)

### (2)      2000 Compliance Inspection

In April 2000, ATF IOIs Herbert Herbers and Deon Bolden conducted an unannounced compliance inspection at Wyatt's licensed premises.  (TR 11-38.)  This was Wyatt's first compliance inspection.  (TR 15.)  During the inspection, the IOIs interacted with Mr. Wyatt and an employee, Dennis Cooper.  (TR 17.)  The IOIs reviewed Wyatt's ATF Forms 4473 and A&D Record from approximately April 1999 through April 2000.  (TR 16-17.)  This inspection revealed that the licensee had sufficient knowledge to maintain an accurate A&D Record and to correctly complete ATF Forms 4473.  (GX 10, 11; TR 22-23.)  The IOIs determined that Wyatt had acquired approximately 2,500 firearms and disposed of approximately 2,100 firearms during the period.  (GX 10; TR 18.)  This inspection also revealed a number of violations of the GCA and implementing regulations for which ATF issued a Report of Violations ("ROV").  (GX 12; TR 18-29.)

Specifically, this compliance inspection demonstrated that Wyatt had failed properly to complete multiple ATF Forms 4473:  during the inspection period, the licensee had executed 2,102 Forms 4473, and the IOIs reviewed 963 of the forms.  (GX 11; TR 24-28.)  Thirty-seven of the examined forms had errors or omissions.  (GX 11; TR 24-25.)  IOI Bolden also determined that on two occasions Wyatt transferred a firearm to an individual who answered "Yes" to a prohibiting question on a Form 4473.[12]  (GX 11, 12; TR 25.)  ATF cited Wyatt for violating 27 C.F.R. § 178.124(c).  (GX 12; TR 29-32.)

IOI Bolden's inspection further disclosed that on four occasions Wyatt had transferred two or more handguns to a single nonlicensee and failed to file the requisite ATF Form 3310.4.

---

[12] Prohibiting questions are those on in Section A of the ATF Form 4473 that—if answered affirmatively by the intended buyer—alert the licensee that the buyer is prohibited under the GCA from purchasing a firearm, such as whether the buyer has ever been convicted of a felony. (GX 11, 12; TR 25-26.)

(GX 11, 12; TR 28-29).  Because the licensee had previously and correctly prepared 114 Forms 3310.4 during the inspection period, and because Mr. Wyatt explained that he had been busy with Y2K sales and had neglected to file the forms, IOI Bolden concluded that the licensee was aware of the requirement to file the forms.  (TR 28-29)  ATF cited Wyatt for violating 27 C.F.R. § 178.126a.  (GX 12.)

The IOIs also took a physical inventory of the firearms at the licensed premises and determined there were 1,570 firearms dispositions unaccounted for in the A&D Record, indicating that Wyatt had failed properly and timely to complete its A&D Record in each instance.  (GX 10; TR 19-23.)  Based on the licensee's prior compliance with the requirement to timely record dispositions in the A&D Record, IOI Bolden concluded that the licensee was aware of the requirement to timely record firearms dispositions.  (TR 22.)  Mr. Wyatt stated to the IOIs that he had gotten behind due to the Y2K situation and that he had not brought his record keeping up to date by April 2000.  (TR 22.)  Thus, ATF also cited Wyatt for violating 27 C.F.R. § 178.125(e).  (GX 12.)

ATF recorded each of these violations on the ROV and issued it to Mr. Wyatt, who signed the ROV on April 14, 2000.  (GX 12 at 3.)  The ROV contained instructions for corrective actions that corresponded to each of the cited violations.  (GX 12.)  IOIs Herbers and Bolden discussed the violations with Mr. Wyatt and explained the required corrective actions at the closing conference.  (TR 30-31.)  At the conclusion of the closing conference, IOIs Herbers and Bolden conducted a regulation review with Mr. Wyatt, explaining in detail all GCA laws and regulations applicable to licensed firearms dealers.  (GX 13; TR 32-34.)  A confirmation at the bottom of the regulation review form reads, "On this day, 4/14/2000, I agree the above information was thoroughly explained to me by an ATF Inspector and any questions regarding

the above information were answered." (GX 13.)  Mr. Wyatt did not sign the statement, however.  (GX 13.)  IOI Bolden stated that he was so caught up in reporting the violations that he forgot to obtain Mr. Wyatt's signature on the document.  (TR 33.)  Nevertheless, each regulation that was checked on the form was thoroughly explained to Mr. Wyatt.  (GX 13; TR 32-34.)  IOI Bolden also indicated that he found Mr. Wyatt very knowledgeable about his responsibilities.  (TR 37.)

Following the inspection, IOI Bolden recommended that Wyatt receive a warning letter from the ATF Area Supervisor.  (TR 34.)  ATF subsequently sent a warning letter to Wyatt describing Wyatt's violations of the GCA and regulations that were cited in the ROV.  (GX 14; TR 35.)  The letter further reminded the licensee that "your Federal firearms license is conditioned upon your compliance with Federal laws and regulations.  Repeat violations of those listed above will be viewed as willful, and may result in the revocation of your license."  (GX 14; TR 35.)

### (3)    2001 Recall Compliance Inspection

In July 2001, ATF IOIs Lisa Laughlin, Gary Julien, and Spencer Coers conducted an unannounced compliance inspection of Wyatt.  (TR 45-62.)  Mr. Wyatt was present during the inspection.  (TR 48.)  The IOIs reviewed ATF Forms 4473 and the A&D Record from approximately July 25, 2000, through July 25, 2001.  (TR 48.)  The IOIs determined that the licensee had acquired approximately 2,007 firearms and disposed of approximately 1,800 firearms during that period.  (GX 16; TR 50.)  The inspection also revealed that the licensee had sufficient knowledge both to maintain an accurate A&D Record and to complete properly Forms 4473.  (GX 16, 17; TR 51-53.)

Nevertheless, the compliance inspection demonstrated that Wyatt had failed properly to complete multiple ATF Forms 4473.  During the inspection period, the licensee had executed 1,756 Forms 4473; the IOIs reviewed 500 of those forms.  (GX 17; TR 51-55.)  Fifty-four of the five hundred forms the IOIs examined had errors or omissions. (GX 17; TR 51-55.)  These errors included failure to have the transferee properly certify his/her status as a prohibited person, "pre-signing" the Form 4473 before the firearm was actually transferred to the buyer, recording the current date rather than the date of birth of the buyer, and completing Section A for an illiterate buyer rather than following the directions on the Form 4473.  (GX 17, 18; TR 52-56.)  ATF cited Wyatt for violating 27 C.F.R. § 178.124(c).  (GX 18; TR 57.)  ATF recorded these violations on the ROV and issued it to Mr. Wyatt, who signed the ROV on July 26, 2001.  (GX 18.)  The ROV contained instructions for corrective actions that corresponded to each of the cited violations. (GX 18.)  IOI Laughlin discussed the violations at the closing conference with Mr. Wyatt and explained the requisite corrective actions.  (GX 18, TR 56-57.)

At the conclusion of the closing conference, IOI Laughlin conducted a regulation review with Mr. Wyatt, explaining all GCA laws and regulations applicable to a licensed firearms dealer.  (GX 19; TR 57-58.)  The regulation review form states in part:

> ATF Inspector Lisa Laughlin explained the above information to me on 7/26/01 and answered my questions regarding this information.  I have received a copy of this for my records as a reference.  I understand that I will be responsible for familiarizing myself with all the laws and regulations governing my licensed firearms business.  Signed:  Miles Wyatt, 7/26/01.

(GX 19.)  IOI Laughlin testified that she recommended no further action or recall inspection because of the improvement in the licensee's records and the correctness of his inventory vis-à-vis the A&D Record.  (TR 59, 62.)

### (4)    2008 Compliance Inspection

In April 2008, ATF IOIs Spencer Coers, Matthew Bline, and Nicole Handera conducted an unannounced compliance inspection of Wyatt.  (TR 64-98.)  The IOIs interacted with Mr. Wyatt, Zachary Wyatt (Mr. Wyatt's son), and employee Dennis Cooper.  (TR 67-68.)  The IOIs reviewed ATF Forms 4473 and the A&D Record completed between approximately April 21, 2007, and April 21, 2008.  (TR 67.)  This inspection again revealed that the licensee had sufficient knowledge to maintain an accurate A&D Record and to complete ATF Forms 4473. (TR 74, 79, 88, 93.)  The IOIs determined that the licensee had acquired approximately 1,118 firearms and disposed of approximately 1,120 during this period.  (TR 69.)  This review also revealed a number of violations of the GCA and implementing regulations for which ATF issued a ROV. (GX 33; TR 94-95.)

First, the inspection demonstrated that Wyatt had failed properly and timely to complete his A&D Record in 1,194 instances.  The IOIs physically inventoried the firearms at the licensed premises and determined that 1,191 firearms dispositions were not accounted for in the A&D Record and that three firearms were on the premises but had not been entered into the A&D Record.  (GX 20, 21, 22; TR 71-77.)  As part of the inventory discrepancies, there were fourteen firearms for which Wyatt ultimately could not account and that Mr. Wyatt reported as lost or stolen on ATF Form 3310.11 (Federal Firearms Licensee Inventory Theft/Loss Report).  (GX 22, 23, 24; TR 73-79.)  Based on the licensee's corrective actions after having been cited for A&D Record violations discovered during the 2000 inspection, IOI Coers concluded that the licensee was aware of the requirement timely to record the firearms dispositions.  (TR 74.)  Mr. Wyatt told the IOIs that he had gotten behind with his A&D Record entries due to family responsibilities and had failed to make entries during all of 2007 and from February to April

2008.  (TR 74.)  ATF cited Wyatt for violating 27 C.F.R. § 478.125(e).  (GX 33.)  This was a

repeat violation from the 2000 inspection.  (*See* GX 12; GX 33.)

Second, the IOIs examined 560 of the 1,120 ATF Forms 4473 that Wyatt had prepared

over a six-month period of time.  (GX 25; TR 80-81.)  Many of these forms contained errors or

omissions.  (GX 25.)  In one instance, Wyatt had failed to have the transferee sign and date the

certification, (GX 25, 26; TR 81-82), for which ATF cited Wyatt with violation of 27 C.F.R. §

478.124(c)(1).  (GX 33.)  Wyatt had twice recorded an expired identification document and had

twice failed to record the expiration date of identification documents, (GX 25, 27; TR 82-84), so

ATF cited Wyatt with violation of 27 C.F.R. § 478.124(c)(3)(I).  (GX 33.)  On twelve Forms

4473, Wyatt failed properly to record required NICS information:  the wrong NICS contact date

was entered in one instance, the NICS response was blank in three instances, and the NICS date

after initial "Delay" response was missing in eight instances.  (GX 25, 28; TR 84-86.)  For these

failures, ATF cited Wyatt with violation of 27 C.F.R. § 478.124(c)(3)(iv).  (GX 33.)

Moreover, on two Forms 4473, Wyatt failed properly to record the description of the

firearm; the type and caliber or gauge of one firearm was omitted, and the type was omitted on

another form.  (GX 25, 29; TR 86.)  ATF cited Wyatt with violation of 27 C.F.R.

§ 478.124(c)(4).  (GX 33.)  Wyatt also failed to enter the transferor's signature and date of

transfer on two of these forms and entered an erroneous date of transfer on fourteen of them,

(GX 25, 30; TR 87-88), resulting in an ATF citation for violation of 27 C.F.R. § 478.124(c)(5).

Finally, on 141 of the inspected forms Wyatt had failed to record the transferor's name, failed to

record the transferor's title, or failed to record transferor's trade name and FFL number.  (GX 25,

31; TR 89-90.)  For these errors, ATF cited Wyatt with violation of 27 C.F.R. § 478.21(a).  (GX

33.)

Third, the 2008 inspection established that on two occasions, Wyatt had transferred two or more handguns to a nonlicensee and failed to file the required ATF Form 3310.4.  (GX 25, 32; TR 91-93.)  ATF cited Wyatt with violation of 27 C.F.R. § 478.126a.  (GX 33.)  Because the licensee had correctly filed Forms 3310.4 in other instances and had been cited for this violation after the 2000 inspection, IOI Coers believed that the licensee had knowledge of this requirement. (TR 91-93.)

ATF recorded these violations on an ROV, which Mr. Wyatt signed on May 29, 2008. (GX 33; TR 94-95.)  The ROV contained instructions for corrective actions corresponding to each cited violation.  IOI Coers discussed the violations and required corrective actions at the closing conference.  ATF Area Supervisor Nena Fisher was also present for the closing conference and advised Mr. Wyatt that Wyatt's FFL was subject to revocation.  (TR 94-95.)

At the conclusion of the closing conference, IOI Coers conducted a third regulation review with Mr. Wyatt, explaining all GCA laws and regulations applicable to licensed firearms dealers.  IOI Coers covered several GCA regulations in detail.  (GX 34; TR 95-96.)  The regulation review form states in part:

> The investigator explained the above information to me on 5/29/08 and answered my questions regarding this information.  I have received a copy of this for my records as a reference.  I understand that this is only a general overview of the regulations and that I will be responsible for familiarizing myself with all of the laws and regulations governing my licensed firearms business.  Signed:  Miles Wyatt, 5/29/08.

(GX 34.)

## D.     Notice of Violations, Decision to Revoke License, and Administrative Hearing

Based on the violations discovered in the April 2008 inspection, on July 22, 2008, ATF issued Wyatt a Notice of Revocation of License ("Notice") for Wyatt's willful violations of the GCA and its implementing regulations.  (GX 2.)  The Notice charged Wyatt with nine counts of

willful violations of the GCA.  (GX 2 at 2-32.)  At the resulting hearing, Wyatt conceded that the

charged violations occurred, (TR 104), but argued that it had not willfully committed them.  (TR

102-12.)  IOIs Bolden, Laughlin, and Coers recorded or testified that Wyatt was advised of the

requirements of the GCA and Mr. Wyatt stated the licensee's records were kept inaccurately due

to inattention on his part.  (TR 104.)

Hearing Officer Peterson agreed with ATF's allegations of willful violations of the GCA

for Grounds I, II, III, IV, V, VI, VII, VII,I and IX as cited in the Notice of Revocation.  (AR B at

5-7.)  He recommended that ATF revoke Wyatt's FFL.  (AR B at 8.)

### III.   ARGUMENT

#### A.   Standard of Review

Summary judgment is appropriate when the pleadings and evidence on file—including,

as in this case, an administrative adjudicatory record—present no genuine issue of material fact

and indicate that a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is appropriate against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case on which it will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477

U.S. at 322.  In order to proceed past a motion for summary judgment, "the nonmoving party

must present evidence sufficient to establish a triable issue of fact on all essential elements of its

case." *Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698, 702 (7th Cir. 2009).

The Gun Control Act of 1968 ("GCA"), as amended, governs this Court's review.  Under

the GCA, an aggrieved licensee may "file a petition with the United States district court . . . for a

*de novo* judicial review of such . . . revocation." 18 U.S.C. § 923(f)(3).  Furthermore, "[i]f the

court decides that [ATF] was not authorized to . . . revoke the license, the court shall order

[ATF] to take such action as may be necessary to comply with the judgment of the court." *Id.* The reviewing court "may only determine whether the [ATF]'s decision is 'authorized.' Selecting an appropriate penalty for the violations found is a matter committed to [ATF]'s discretion." *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 464 n.2 (7th Cir. 1980). The narrow issue of this Court's inquiry, then, is whether the uncontested facts of the case authorized the ATF to revoke Wyatt's FFL under the GCA and its implementing regulations.

In performing its review, the Court has discretion to "consider any evidence submitted by the parties" regardless of whether the evidence was considered at the hearing below. 18 U.S.C. § 923(f)(3). The Court may attach the weight, if any, that it considers appropriate to ATF's factual determinations and decision. *Stein's, Inc.*, 649 F.2d at 467; *see also Breit & Johnson Sporting Goods, Inc., v. Ashcroft*, 320 F. Supp. 2d 671, 673 (N.D. Ill. 2004) ("'De novo review' may be confined to the administrative record or may be supplemented by the admission of additional evidence."). While the Court's review is *de novo*, a firearms dealer has no absolute right to an evidentiary hearing in the reviewing court, but instead only an opportunity to present additional evidence. *See Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 348 F. Supp. 2d 1299, 1307 (S.D. Ala. 2004). This evidence may come in the form of an affidavit pursuant to a summary judgment motion rather than as testimony at an evidentiary hearing if no substantial credibility questions are presented. *Id*. (citing *Stein's, Inc*., 649 F.2d at 466 n.5).

Summary judgment upon *de novo* review is appropriate based upon the administrative record alone when no substantial reason to receive additional evidence is present and when the petitioner contesting a license revocation does not draw into question the material facts developed at the administrative hearing. *Cf. Stein's, Inc.*, 649 F.2d at 468 n.7. Wyatt did not

15

contest the factual findings of the administrative record in its petition/complaint, nor did it allege that additional evidence is necessary in order to challenge ATF's findings or determination. *See id.* Therefore, no additional evidentiary material is necessary or appropriate in this case, as the administrative record is undisputed and amply explains the actions of both the ATF and the plaintiff. When a plaintiff fails to demonstrate genuine issues of material fact, it is unnecessary to hold an evidentiary hearing. *See Breit & Johnson Sporting Goods, Inc.,* 320 F. Supp. 2d at 673.

For all of these reasons, the Court can and should decide this matter on the basis of the comprehensive administrative record and associated exhibits.

**B.    The Undisputed Evidence Demonstrates that Wyatt Willfully Violated the GCA.**

**(1)    Introduction**

As courts have recognized, "ATF has the right to insist on 'total compliance [with the GCA] as a condition of retaining the privilege of dealing in firearms.'" *Nationwide Jewelry & Pawn, Inc. v. United States*, 455 F. Supp. 2d 1379, 1386 (M.D. Ga. 2006) (alteration in original) (quoting *Willingham Sports, Inc.*, 348 F. Supp. 2d at 1309 n.14). This is because "the gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms. . . ." *Willingham Sports, Inc.*, 348 F. Supp. 2d at 1309 n.14 (internal citations omitted) ("Where a dealer does not properly maintain ATF records to the agency's exact specifications, the ATF's ability to fulfill its legislative mandate may be compromised. If ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill.").

16

Thus, even a single violation of the GCA or its implementing rules and regulations can serve as the basis for ATF to revoke a firearms license. *Appalachian Res. Dev. Corp. v. McCabe,* 387 F.3d 461, 464 (6th Cir. 2004); *see also Breit & Johnson Sporting Goods*, 320 F. Supp. 2d at 678. It is the responsibility of licensed dealers to know the statutes and regulations that are applicable to FFLs. *See Willingham Sports Inc.*, 348 F. Supp. 2d at 1301. And if a licensee employs individuals to assist in the running of the business, the licensee is charged with the conduct and knowledge of its employees. *Stein's Inc*., 649 F.2d at 467-68.

The ATF is empowered to revoke a FFL for willful violation of any provision of the GCA or its enabling rules or regulations. *See* 18 U.S.C. § 923(e). To establish willfulness, ATF need only "prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements." *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497 (7th Cir. 2006) (quoting *Stein's, Inc.,* 649 F.2d at 467). Willfulness does not require proof of bad intent or evil motive. *Id.* Instead, "[e]vidence of repeated violations with knowledge of the law's requirements has been held sufficient to establish willfulness." *Stein's Inc.*, 649 F.2d at 468; *see also Appalachian Res*., 387 F.3d at 465 ("'[D]isregard of a known legal obligation is sufficient to establish a willful violation.'") (quoting *Bryan v. United States*, 524 U.S. 184, 190 (1998)).

The Fourth Circuit analyzed the willfulness inquiry in the context of record-keeping omissions in *RSM, Inc. v. Herbert*, 466 F.3d 316 (4th Cir. 2006). The court stated that, "when determining the willfulness of conduct, we must determine whether the acts were committed in deliberate disregard of, or with plain indifference toward . . . known legal obligations. But when applying such a formulation of willfulness to an omission—the *failure* to act—there is seldom direct evidence that a person intentionally failed to do something that was legally required." *Id.*

at 321-22 (emphasis in original).  Rather, the court concluded, "when evaluating omissions alleged to be deliberate, it is often necessary to ascertain whether the failure to act resulted from a conscious consideration of the legal requirement to act."  Therefore, "a court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement or (2) knew generally that his failure to act would be unlawful."  *Id.*

These elements of willfulness are demonstrated here.

### (2)   Wyatt's Failures to Timely Maintain Its A&D Record Constitute Willful Violations of the GCA

Wyatt's admitted and repeated failures to comply with the GCA and its implementing regulations—specifically, its failure to ensure that Forms 4473 were properly completed, failure to keep its inventory records up to date, and failure to file a report of multiple handgun disposition—demonstrate willful violations that contravene the GCA.  *See 3 Bridges, Inc. v. United States*, 216 F. Supp. 2d 655, 659 (E.D. Ky. 2002); *see also* 27 C.F.R. § 478.125(e) & (g).

IOIs Marco and Norman reviewed the requirements for maintaining the A&D Record with Mr. Wyatt during Wyatt's 1992 application inspection.  (GX 15; TR 43-45.)  Wyatt was therefore aware of the GCA's record keeping requirements and understood its legal obligation to abide by them.  *See Stein's, Inc*., 649 F.2d at 468 ("The record shows that the plaintiff's agents were instructed on the requirements of the law and acknowledged an understanding of the . . . regulations.").  Nevertheless, the 2000 compliance inspection by IOIs Herbers and Bolden of Wyatt's A&D Record revealed that Wyatt did not properly maintain its inventory of firearms.  (GX 10, 12, 14; TR 18-23.)  Although Wyatt had been keeping accurate records until April of 1999, thus further demonstrating its awareness of the requirements, after that time 1,570 firearms were not timely entered as dispositions in the A&D Record.  (*Id.*)  At the conclusion of the 2000 inspection, the inspectors explained the violation to Mr. Wyatt and cited the licensee for the

violation on the ROV.  (GX 12; TR 29-31.)  In addition, ATF sent a warning letter to the

licensee that Mr. Wyatt admitted receiving.  (GX 14; TR 34-36.)  The letter reviewed all

violations of the GCA and regulations found by the IOIs during the inspection and contained the

admonition, "You are reminded that your Federal firearms license is conditioned upon your

compliance with Federal laws and regulations.  Repeat violations of those listed above will be

viewed as willful, and may result in the revocation of your license."  (GX 14.)

　　　　IOI Laughlin's 2001 recall compliance inspection determined that all firearms acquired

and disposed of during the preceding period were timely entered in the A&D Record.  (TR 50-

51, 59.)  By contrast, the 2008 compliance inspection revealed that Wyatt had failed to timely

enter three firearms as acquisitions and 1,191 firearms transferred as disposition in the A&D

Record during the preceding period.  (GX 21, 22, 23; TR 69-72.)  Despite Wyatt's awareness of

the record-keeping requirements, there were no dispositions in the A&D Record for firearms

sold during the entire year of 2007 and from February to April of 2008.  (TR 74.)  Additionally,

fourteen of the firearms not timely recorded in the A&D Record were missing from the

licensee's inventory, requiring Wyatt to file a Theft/Loss Report, ATF Form 3310.11, with ATF.

(GX 22, 24; TR 75-77.)[13]  When questioned at the hearing regarding these failures to timely

enter acquisitions and dispositions in the A&D Record, Mr. Wyatt stated that he

was aware of the requirements and that this was his second violation.  (TR 110).

　　　　The Hearing Officer, reviewing the facts that are undisputed in this proceeding,

accordingly found that

> the licensee did fail to timely record the acquisition and disposition of firearms
> into the A&D Book as required and that this was **a repeat violation**.

---

[13] Initially, Wyatt was unable to account for twenty-nine firearms and filed the Theft/Loss Report
citing twenty-nine missing firearms.  Mr. Wyatt later determined that the actual number of
missing firearms was fourteen. (GX 22; TR 77-79.)

* * *

> [T]he licensee testified that the violations presented by the Government were accurate, that he knew the record keeping requirements and took responsibility for the violations.  The licensee had been instructed on proper record keeping procedures during the initial application inspection and at each subsequent compliance investigation and had received a warning letter, but still failed to properly maintain his A&D Book as required.  I therefore find that these violations were willful.

(AR B at 5-6.) (emphasis in original).

Thus, Wyatt was at least plainly indifferent to the requirements of the GCA.  Despite Mr. Wyatt's awareness of the record keeping requirements of the GCA, he nonetheless completely ignored the requirements and failed to enter firearms dispositions into the A&D Record for fifteen months.  (GX 12.)  Wyatt's total disregard of the requirements can reasonably be characterized as purposeful in view of previous citations for this violation.  Because there is no genuine issue of material fact as to whether Wyatt failed timely and correctly to maintain its A&D record, and because Wyatt admittedly understood its legal obligations under the GCA, the ATF was authorized to revoke Wyatt's FFL.  *See Article II Gun Shop, Inc.,* 441 F.3d at 497-98; *Stein's, Inc.,* 649 F.2d at 467-68.  Accordingly, this Court should enter summary judgment for Defendant.

### (3)   Wyatt's Repeated Failures to Ensure Proper Completion of ATF Forms 4473 Constitute Willful Violations of the GCA.

Pursuant to the GCA and its implementing regulations, licensees must correctly and accurately complete ATF Forms 4473.  This requirement ensures that the licensee confirms the transferee's suitability and also assists law enforcement officers in criminal investigations involving guns.  *See RSM, Inc. v. Herbert*, 466 F.3d 316, 323-24 (4th Cir. 2006) (ATF Form 4473 and other requirements "help ensure that persons entitled to have guns may have them and that persons not entitled to have guns are denied them.").

20

When Wyatt first applied for an FFL in 1992, IOI Marco specifically reviewed with Wyatt the requirements for the GCA laws and regulations regarding ATF Forms 4473.  (GX 15; TR 43-44.)  At the administrative hearing, Mr. Wyatt admitted that the IOIs reviewed the GCA regulations with him during the application and compliance inspections.  (TR 109-10.)  Wyatt was therefore indisputably aware of the GCA's form completion requirements and understood its legal obligation to abide by them.  *See Stein's, Inc*., 649 F.2d at 468.  Nevertheless, the 2000 compliance inspection revealed that Wyatt repeatedly failed properly to complete the Forms 4473.  IOIs Bolden and Herbers reviewed 963 Forms 4473 out of 2,102, finding errors on 37 of them—including failure to ensure that transferees answered all questions in Section A.[14]  (GX 11; TR 24-25.)  Strikingly, on two of the Forms 4473, the transferees answered "Yes" to questions that should have given the licensee reasonable cause to believe that the transferees were prohibited under the GCA from receiving a firearm.  (GX 11; TR 25.)

During the 2001 inspection, the IOIs reviewed 500 Forms 4473 out of the 1,756 Forms executed during the inspection period.  The IOIs determined that the licensee had errors or omissions on 54 of the forms.  (GX 17.)  On many Forms, the licensee "pre-signed" the Form, meaning that the licensee signed Items 22 and 24 prior to actual transfer of the firearm.  (TR 52-54.)  IOI Laughlin brought the violation to Mr. Wyatt's attention, and they discussed remedial measures.  (TR 53-54.)  This violation was cited on the ROV and discussed during the regulation review.  (GX 18, 19; TR 56-58.)

During the 2008 inspection, IOIs Coers, Handera, and Bline examined 560 ATF Forms 4473 out of the 1,120 executed during the inspection period.  (TR 80.)  The IOIs determined that the licensee had committed many violations on the Forms 4473—as described in detail

---

[14] The remainder of the Forms had been correctly prepared, demonstrating that Wyatt had knowledge of the record keeping requirements for Forms 4473.

*supra*—including failure to completely and accurately record NICS information on the Form in twelve instances.[15] (GX 25, 28.) As in 2001, the licensee was again "pre-signing" the Forms 4473. (GX 33; TR 87-88.) IOI Coers testified that Mr. Wyatt was aware of the proper way to execute the Forms 4473, especially in view of the prior citation. (TR 88.)

At the hearing, Mr. Wyatt did not contest that the licensee had committed these violations. (TR 104, 109, 112.) He acknowledged that a licensee is responsible for the acts and omissions of its employees while operating its business under the GCA. (TR 109, 110, 112.) He also testified to the training of Wyatt employees in the proper record keeping methods. (TR 103.) Yet Wyatt, despite having been fully and repeatedly advised of its responsibilities, repeatedly failed to comply with those responsibilities.

As noted, evidence of repeat violations, while not necessary to establish willfulness, is in itself sufficient to establish willfulness where there is knowledge of the law's requirements. *Appalachian Res. Dev. Corp.*, 387 F.3d at 464. Here, the undisputed facts justify ATF's characterization of Wyatt's violations as willful, thus supporting ATF's decision to revoke Wyatt's FFL. Indeed, Mr. Wyatt acknowledged that ATF had no recourse but to revoke his license. (TR 112.) This Court should therefore enter summary judgment in favor of Defendant.

---

[15] A licensee may transfer a firearm without receiving further reply from NICS after a "Delayed" response after three business days have elapsed. A record of the date of the last NICS contact helps ATF fulfill its mandate to ensure that the licensee has waited the required period of time prior to transferring the firearm. 18 U.S.C. § 922(t)(1)(B); 27 C.F.R. § 478.102(a). Failure to observe the mandated waiting period can result in the licensee transferring a firearm to a person prohibited from receiving a firearm under the GCA. *See* 18 U.S.C. § 922(d) and 922(g). Accordingly, NICS contact dates are crucial entries.

**(4)     Wyatt's Repeated Failures to Ensure Proper Completion of ATF Forms 3310.4 Constitute Willful Violations of the GCA.**

Wyatt's 2000 compliance inspection by IOIs Bolden and Herber revealed that Wyatt transferred two or more handguns to a nonlicensee within a five-day period without filing a report of a multiple sale with the ATF.  (GX 11; TR 28-29.)  IOIs Marco and Laughlin had reviewed the requirement for filing of multiple sale reports with Wyatt during a regulation review conducted in conjunction with the 1992 application inspection.  (GX 15.)  Additionally, Wyatt had properly filed 110 ATF Forms 3310.4 during the 2000 inspection period, thus demonstrating that Wyatt was aware of the pertinent requirements.  (TR 28.)  ATF cited Wyatt for this violation in 2000, (GX 12), the IOIs explained the violation during the closing conference, (TR 30), and the IOIs further discussed the requirement in the regulation review after the inspection.  (GX 13.)  Finally, ATF noted the violation in its warning letter that Mr. Wyatt received.  (GX 14.)  Despite these notifications, however, IOI Coers determined during his 2008 compliance inspection that Wyatt again failed to file the required multiple sale report with ATF on two occasions.  (GX 32, 33; TR 91-93.)  These repeated violations—which constitute willful violations as discussed above—also authorized ATF to revoke Wyatt's FFL.

**C.     ATF Had the Authority To Revoke Immediately Wyatt's FFL Upon the Filing of the Final Notice of Revocation.**

Wyatt may also be challenging the timing of the revocation of its FFL, which was effective immediately.  (Complaint ¶ 9.)  But, just as ATF's revocation decision was authorized and supported by overwhelming and uncontested evidence, the applicable laws also authorize immediate revocation.

First, no statutory or regulatory provision prohibits immediate revocation of an FFL. Rather, an aggrieved licensee may specifically seek a stay of the effective date of a revocation

order during the agency administrative hearing process.  18 U.S.C. 923 (f)(2) ("In the case of a revocation of a license, the Attorney General shall upon the request of the holder of the license stay the effective date of the revocation.").  That stay does not survive the administrative hearing process itself, for 18 U.S.C. § 923 (f)(3) plainly provides for judicial review but contains no comparable permissive stay provision.  *See id.* ("The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court . . . for a de novo judicial review of such denial or revocation. . . .  If the court decides that the Attorney General was not authorized to . . . revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.")  Had Congress intended to mandate that ATF grant licensees the ability to continue operations after their licenses had been administratively revoked and were pending judicial review, it could have included an explicit stay provision in § 923(f)(3) just as it did in § 923(f)(2).

Second, ATF has discretion in the way it carries out its functions under the GCA, including the statutory authority to promulgate regulations for the implementation of the GCA.  *See* 18 U.S.C. § 926.  ATF retains discretion to set the effective date of an FFL revocation after an administrative hearing but during the pendency of a petition for *de novo* review in a United States District Court.  *See generally Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990) ("Because § 926 authorizes the Secretary to promulgate those regulations which are 'necessary,' it almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary.'").  In cases involving *de novo* review after a final agency action, such as in this case, if the "Director finds that justice so requires, he may postpone the effective date of . . .

revocation of a license . . . pending judicial review."  27 C.F.R. § 478.78.  ATF is not, however, required to do so.

ATF properly exercised its discretion in this case.  ATF issued its Final Notice of Revocation to Wyatt on February 25, 2009, and Wyatt received this Final Notice on March 13, 2009.  (AR C at 1, 10.)  By letter dated March 16, 2009, Wyatt's counsel requested that ATF postpone the effective date of revocation of Wyatt's FFL for sixty days in order to allow the licensee to dispose of his current inventory.  (AR E.)  In a written response dated March 23, 2009, DIO Lambert granted Wyatt a sixty-day delay of effectiveness of revocation "for the sole purpose of disposing of inventory and finalizing documents required by the Gun Control Act."  (AR F.)  DIO Lambert further denied authorization to Wyatt to acquire any additional firearms during this period.  (AR F.)  These acts of discretion are well within ATF's legal authority.

To the extent that Wyatt challenges the ATF's authority to revoke Wyatt's FFL while *de novo* review is pending, the challenge must fail.  As stated, there is no statutory authority for such a contention.  Furthermore, at least one District Court recently considered and rejected a similar contention.  *RSM, Inc. v. Herbert,* Civ. No. WMN-05-847 (D. Md.), *aff'd*, 466 F.3d 316 (4th Cir. 2006).[16]  The court upheld the Attorney General's authority to promulgate 27 C.F.R. § 478.78, stating that "[s]ection 926 grants the ATF authority to promulgate rules that are 'necessary' to carry out the chapter's provisions.  [Section] 478.78 was promulgated in order for ATF to carry out its responsibilities under the statute.  [Section] 923(f) fails to state when the stay is to be lifted and the regulation reasonably fills in this blank in accordance with the timing suggested in § 923(e)."  *RSM, Inc.*, No. WMN-05-847, slip op. at 6.  The court concluded that "§ 923(f) does not offer definitive guidance as to when a stay is to be lifted and ATF did have

---

[16]A copy of this case is attached as Attachment A to this memorandum.

authority to promulgate § 478.78.  Thus, the Court will defer to ATF's interpretation under which the decision to stay a license revocation pending judicial review is not mandatory but is discretionary."  *Id.* at 7 (quoting *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 522 n.12 (1982)); *see also Garner v. Lambert*, No. 5:07CV03506, slip op. at 6 (N.D. Ohio Dec. 31, 2007) ("[T]he Court concludes that § 923(f)(2), when read in proper context, provides for a stay only during the pendency of administrative review. . . .  [T]he applicable authority for obtaining a stay while court proceedings are pending [becomes] 27 C.F.R. § 478.78").[17]

The same conclusion applies here.  Because Congress has entrusted ATF with enforcement of the GCA, ATF's interpretations as to permissible revocation regulations are entitled to substantial deference, as long as they are rational and consistent with the statute.  *See National Rifle Ass'n v. Brady*, 914 F.2d at 478.  The regulation at issue authorized Marcia F. Lambert, as the ATF Columbus Field Division DIO, to grant, deny, or (as in the present case) partially grant a licensee's request to continue operations during the pendency of the lawsuit challenging ATF's final decision to revoke a license.  DIO Lambert's decision to deny the licensee's right to continue acquiring firearms was well within her discretion.  *See id.*

## IV.   CONCLUSION

Wyatt does not dispute the findings of fact regarding its violations as described in the administrative record.  These undisputed material facts demonstrate that Wyatt not only was aware of its legal obligations as an FFL holder, but also that it repeatedly failed to comply with the requirements of the GCA and pertinent regulations.  It is therefore undisputed that Wyatt was plainly indifferent to or purposefully disregarded key statutory and regulatory provisions, and ATF properly found that Wyatt's violations were willful.  ATF's revocation was, therefore, fully

---

[17] A copy of this case is attached as Attachment B to this memorandum.

authorized as a matter of law.  Moreover, the timing of the revocation was well within ATF's

discretion.

ATF respectfully requests that the Court grant summary judgment in its favor.

Respectfully submitted,

TIMOTHY MORRISON
United States Attorney

By:     /s/ William L. McCoskey
        William L. McCoskey
        Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2009, the foregoing **DEFENDANTS/RESPONDENTS'**

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed

electronically and notice delivered to:

Thomas A. Aycock, Esq.
Aycock Law Office, P.C.
Attorney No. 25469-34
23 South 8th Street, Suite 2400
Noblesville, Indiana 46060
Phone:  317-774-0096
Facsimile:  317-219-0551
Email:  Aycocklawoffice@gmail.com


        /s/ William McCoskey
        William McCoskey
        Assistant United States Attorney